UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP BUCHANAN,

       Plaintiff,                     CIVIL ACTION NO. 05 CV 72374 DT

      v.                                 DISTRICT JUDGE BERNARD A. FRIEDMAN

JO ANNE B. BARNHART,              MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER
OF SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

    This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion be denied, that plaintiff's motion be granted, and that the matter be remanded for further proceedings with respect to the limitations resulting from plaintiff's mental impairment and additional testimony by a vocational expert.

**II. Background**

    In July of 2001, plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), alleging that he was disabled due to pain and swelling in his left leg, with a disability onset date of December 4, 2000. (Tr. 47-49, 57) Plaintiff was 45 years of age when he

filed the application. He has a high school education, with a work history including employment as a production assembler and a machine operator. (Tr. 63, 66-69)

The Social Security Administration (SSA) denied plaintiff's claim on January 15, 2002. (Tr. 33-37) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 38) The hearing was held on May 21, 2003 before ALJ John A. Ransom. (Tr. 370-85)

On June 23, 2003, the ALJ issued a written decision denying plaintiff's claim. (Tr. 16-26) The ALJ determined that plaintiff had the following impairments: left carpal tunnel syndrome, left cubital tunnel syndrome, C-4 radiculopathy, status-post head injury with mild encephalopathy, deep vein thrombosis of the lower extremities, status-post Achilles tendon tear and surgical repair, lumbar radiculopathy, status post 1986 hip repair following a motor vehicle accident, and manic depression. (Tr. 25) Further, the ALJ determined that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that he did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. Id. Taking into account plaintiff's age, education, work history, and residual functional capacity (RFC), as well as the hearing testimony of a vocational expert (VE), the ALJ concluded that plaintiff retained the ability to perform a range of "sedentary" work and that there were a significant number of jobs in the national economy that

he could perform.[1]  (Tr. 25-26)  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.  Id.

On July 3, 2003, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 12)  The Council denied the request on May 11, 2005. (Tr. 6-8)  The ALJ's decision thus became the final determination of the Commissioner.

On June 15, 2005, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff contends in his motion that the ALJ posed an inaccurate hypothetical question to the VE and thus could not properly rely on the VE's testimony in determining that he was not disabled.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

---

[1] "Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV.  Analysis**

At the hearing, the ALJ posed the following hypothetical question to the VE:

> If he could perform sedentary work but he would require a sit/stand
> option with no repetitive bending, twisting or turning, no climbing,
> no repetitive pushing, pulling, gripping or grasping, no above
> shoulder work and simple repetitive work in your opinion would
> there be jobs in existence in significant numbers in the regional
> economy that he could perform?

(Tr. 382) In response thereto, the VE stated that a person with plaintiff's vocational background and functional limitations, as determined by the ALJ, could work as an inspector, an assembler, a sorter, a cashier, and an order clerk. (Tr. 382-83) The VE further testified that there were,

collectively, 38,500 such jobs in the lower two-thirds of Michigan's lower peninsula. (Tr. 24, 382-83) Based on the testimony of the VE, the ALJ determined that there were a significant number of jobs in the national economy that plaintiff was capable of performing and, therefore, that he was not "disabled" within the meaning of the Social Security Act.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

Plaintiff claims that the ALJ posed an inaccurate hypothetical to the VE and, therefore, that his reliance on the VE's testimony constitutes reversible error. Plaintiff has no quarrel with the physical restrictions included in the hypothetical. Rather, he claims that the ALJ failed to include in the hypothetical restrictions sufficient to accommodate his mental impairment.

The record reflects that on November 20, 2001 a State of Michigan Disability Determination Service (DDS) registered nurse interviewed Dr. J.T. Aills, M.D., a psychiatrist who examined plaintiff on several occasions dating back to August of 1991. The substance of that conversation, as reproduced in a memo prepared by the nurse, is as follows:

> Doctor gave the following information: the patient was first seen about 8/13/91 and has been seen intermittently since then. He was last seen 11/9/01. His diagnosis is Bipolar Disorder 296.7. He is on Desyrel 50 (3-4) at HS, Valium 10mg tid prn for anxiety, Trileptal 300mg qid and is still on Effexor XR 75 mg bid. The patient was in Day Treatment from 7/21/97 to 8/1/97.
>
> When seen the patient was c/o stress, he reports that his mood is up and down and feels paranoid suspicious. He is appropriately dressed. He is anxious and worried about things. He has called the office frequently about his DDS report. When seen 8/27/97 he reported he was stressed out, his nerves were shot, and he was going through a divorce. He stated he was depressed and unable to work. Since then he has had issues with child support and court appearances. In 6/14/01 he reported he was divorcing again. He is cooperative at the office but appears frantic.
>
> His speech is rapid and pressured. His affect is labile and anxious. Mood is mixed–depressed and anxious. The patient has had no hallucinations or delusions or suicidal thoughts or plants. He has difficulty with both attention and concentration. He is impulsive. More recently he has reported obsessive compulsive behaviors ie foot step counting.
>
> The patient does not have gross memory problems, but has difficulty secondary to inattention and preoccupation. He is distractible. His judgment is fair to good. His insight is fair. He is oriented to time, place, and person. He drives to the office and is on time. Sleep and appetite are fair and variable. He has not list a significant amount of weight. His self-esteem is fair. Doctor stated that patient has difficulty completing tasks–he has difficulty staying on task. He does have other medical problems.

> Doctor stated that patient's prognosis is guarded. He is capable of handling his own funds.

(Tr. 174)

The record also contains the findings of Dr. Sydney Joseph, a DDS consulting physician. In a Psychiatric Review Technique (PRTF), Dr. Joseph indicated that plaintiff was mildly restricted in his activities of daily living, that he was mildly limited in maintaining social functioning, that he had moderate difficulties in maintaining concentration, persistence, and pace, and that he had experienced no episodes of decompensation. (Tr. 190) Dr. Joseph also indicated in a Mental Residual Functional Capacity Assessment Form (MRFCAF), among other things, that plaintiff was moderately limited in the following areas: (1) the ability to understand and remember detailed instructions, (2) the ability to carry out detailed instructions, (3) the ability to maintain attention and concentration for extended periods, (4) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods, and (6) the ability to set realistic goals or make plans independently of others. (Tr. 194-95) In the "Functional Capacity Assessment" portion of the MRFCAF, Dr. Joseph gave the following recommendation: "[claimant is] able to do simple unskilled work." (Tr. 196)

The ALJ determined that plaintiff suffered from manic depression and, as result of that condition, that he had mild limitations with regard to activities of daily living, mild difficulties in

social functioning, and moderate deficiencies in concentration, persistence, or pace. (Tr. 22); see also 20 C.F.R. § 404.1520a. The ALJ further determined that plaintiff had not experienced any episodes of decompensation in a work-like setting. Id. In order to accommodate plaintiff's depression in the hypothetical he posed to the VE, the ALJ included a limitation to "simple, repetitive" work. (Tr. 382) Plaintiff does not challenge the ALJ's findings regarding the extent to which he is functionally limited as a result of his mental impairment. Further, plaintiff concedes that the ALJ was not required to expressly include in the hypothetical reference to plaintiff's moderate deficiency in concentration, persistence, or pace. See Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001). Rather, plaintiff contends that the "simple, repetitive" work restriction was insufficient to account for that deficiency.

    Courts have struggled with the issue of what constitutes sufficient accommodation for a deficiency in this area, and no hard and fast rules emerge from the cases that have addressed this issue. Again, the question is whether the ALJ has formed a hypothetical that accurately conveys to the VE the extent of the claimant's impairment. Varley, supra, 820 F.2d 777. Each case must be decided on its own facts – there is no "one size fits all" approach to assessing a claimant's mental impairment. In some cases, a restriction to "simple, repetitive" work might be sufficient to accommodate a claimant's "moderate" deficiency in concentration, persistence, or pace. In other cases, such a restriction may prove to be insufficient. In either case, the question before the reviewing court is whether the record contains sufficient evidence to warrant a finding that the restrictions contained in the hypothetical accurately depict what the claimant can and cannot do. A finding by an ALJ that a claimant has a moderately or markedly impaired in the area of

concentration, persistence, or pace does not mandate that certain limitations automatically be included in a hypothetical. The area of concentration, persistence, or pace, as used in a PRTF, encompasses a range of functional considerations, as indicated in 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(C)(3), which provides, in part, the following:

> You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks. Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion. However, if you can complete many simple tasks, we may nevertheless find that you have a marked limitation in concentration, persistence, or pace if you cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions.

Thus, an ALJ's finding that a claimant has moderate deficiencies in the area of concentration, persistence, or pace, standing alone, provides little information about the nature of the claimant's deficiency. In determining whether a hypothetical accurately depicts a claimant's mental impairment, the reviewing court must look to the record as a whole, not simply the ALJ's conclusory finding that a claimant has a "moderate" or "marked" deficiency in this area. Judge Rosen recently addressed this issue in Bohn-Morton v. Commissioner of Social Security, ___ F.Supp.2d ___ , 2005 WL 2433149 at *3 (E.D.Mich), stating the following:

> [T]he five-point scale used in the PRTF encompasses a wide and variable continuum of symptoms and effects pertaining to concentration, persistence, *or* pace. Thus, an individual who "often" experiences deficiencies in concentration alone, but not persistence in pace, might be unable to perform complex or detailed work, yet still be capable of carrying out simple and rote tasks. Another individual in this same broad category, in contrast,

> might be more significantly limited as to the pace of work, so that she could perform even complex tasks so long as the quota was suitably low.
>
> In the end,...the focus [must] be on the ALJ's detailed assessment of a claimant's limitations, as opposed to the ALJ's broad characterization of the claimant's deficiencies on the five-point PRTF scale. To be sure, all of the ALJ's findings, including those summarized on a PRTF, must be harmonized and incorporated into the hypothetical questioning of the VE. Yet, a particular assessment on a PRTF does not mandate a rigid checklist of restrictions that must be included in this questioning. Rather, a case-by-case determination is required, under which the ALJ must translate the broad PRTF classifications into a set of specific limitations that are properly rooted in the administrative record.

In the present matter, the court, upon a review of the record as a whole, is not satisfied that the restriction to "simple, repetitive" work is sufficient to accommodate plaintiff's impairment in the area of concentration, persistence, or pace.

As an initial matter, the court notes that it is somewhat difficult to assess the accuracy of the hypothetical in this matter due to the fact that the ALJ did not discuss plaintiff's deficiency of concentration, persistence, or pace in any detail. See, e.g., Hurst v. Secretary of Health and Human Services, 753 F.2d 517 (6th Cir. 1985)(articulation of reasons for disability decision essential to meaningful appellate review); see also Bailey v. Commissioner of Social Security, 1999 WL 96920 at **4 (6th Cir.(Ohio))("Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes"); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained"). The ALJ did not discuss the evidence on which he relied in concluding that plaintiff was moderately impaired in this area, and he did not indicate whether plaintiff's

difficulties lie in the area of concentration, persistence, *or* pace, or in some combination of all three areas. A restriction to "simple, repetitive" tasks would likely be sufficient to accommodate a claimant who has a moderately impaired ability to, for instance, understand, remember, and carry out detailed instructions. If that was the extent of plaintiff's impairment, the court would be inclined to conclude that the hypothetical accurately depicted plaintiff's mental impairment. However, the ALJ did not make findings regarding the nature of plaintiff's impairment. Rather, the ALJ merely offered the conclusory statement that "[t]he claimant has no more than moderate deficiencies in concentration, persistence, or pace." (Tr. 22) Hence the court's difficulty in reviewing the ALJ's decision.

In any event, there is evidence in the record indicating that plaintiff's mental impairment results in limitations of concentration, persistence, *and* pace. Dr. Aills, in discussing plaintiff's mental impairment, noted, among other things, that plaintiff "has difficulty with both attention and concentration," that he "has difficulty secondary to inattention and preoccupation," that he was "distractible," and that he "has difficulty completing tasks–he had difficulty staying on task." (Tr. 174) Further, as discussed above, Dr. Joseph, the DDS consultant, indicated in the MRFCAF that plaintiff was moderately limited in the following areas: (1) the ability to understand and remember detailed instructions, (2) the ability to carry out detailed instructions, (3) the ability to maintain attention and concentration for extended periods, (4) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistence pace without

an unreasonable number and length of rest periods, and (6) the ability to set realistic goals or make plans independently of others. (Tr. 194-95) Again, a restriction to "simple, repetitive" tasks may be sufficient to account for deficiencies in the first two areas listed above, but the court cannot see how such a restriction could reasonably accommodate a moderately limited ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, or perform at a consistent pace without an unreasonable number and length of rest periods.[2] The restriction employed by the ALJ in the hypothetical does not take all of these considerations into account. Accordingly, the court finds that the hypothetical did not accurately depict plaintiff's mental impairment and, therefore, that the ALJ's reliance on the VE's testimony in determining that plaintiff was not disabled constitutes reversible error.

While there are no cases that are directly on point, as each case must be decided on its own distinct facts, there are several cases in which courts faced with similar facts have concluded

---

[2] It could be argued that Dr. Joseph's recommendation that plaintiff could perform "simple, unskilled" work supports the ALJ's decision to employ in the hypothetical a restriction to "simple, repetitive" work. However, the court is not persuaded that Dr. Joseph's recommendation constitutes a substantial evidentiary basis for the ALJ's decision. Dr. Joseph's recommendation is of marginal evidentiary value because he provided no supporting reasons. See 20 C.F.R. § 404.1527(d)(3)("The better and explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions."). Further, the recommendation does not appear to take into account the specific findings Dr. Joseph made in the MRFCAF regarding plaintiff's deficiencies in the areas of persistence and pace.

that the hypothetical posed by the ALJ did not adequately reflect the functional limitations imposed by the claimant's mental impairment. These cases do not dictate the result reached here, but the court finds them to be relevant and persuasive. For instance, in McGuire v. Apfel, 1999 WL 42605 (D.Or. 1999), the ALJ indicated in a PTRF that the claimant "often" had deficiencies in concentration, persistence, or pace.[3] In order to accommodate that impairment, the ALJ included in the hypothetical he posed to the VE a limitation to "simple work, nothing complex." On review, the district court determined that the limitation employed by the ALJ was inadequate to account for the claimant's deficiencies in concentration, persistence, or pace:

> By stating that the person requires simple work and has below average reading skills, the ALJ was referring to a person who could perform only routine, simple tasks. That is a far cry from a person who cannot concentrate at work, works at a slow pace, and cannot complete projects on a timely basis. Numerous people who only have the ability to perform simple, no-skilled tasks, can still perform those tasks in a timely manner. It is the inability to work at a normal pace resulting in untimely completion of tasks which causes a person to be disabled from working. Because the ALJ's hypothetical does not mention any problems regarding completion of tasks on time or the pace with which the person would work, this court cannot equate the ALJ's statement with the ALJ's express determination of McGuire's limitation.

Id. at * 15.

Further, in Bielat v. Commissioner of Social Sec., 267 F.Supp.2d 698 (E.D.Mich. 2003), the district court determined that the hypothetical posed by the ALJ, which included a limitation

---

[3]The Social Security Administration uses a different PTRF than was used at the time the McGuire case was decided. The term "often" as used in the old version of the PTRF equates with the term "moderate" as used in the new PTRF.

to unskilled, low stress jobs, did not fairly incorporate the ALJ's determination that the claimant had a markedly limited ability to concentrate or persist at a task until timely completion. The district court noted that even if the terms "unskilled" and "low stress" reflected an inability to concentrate, they did not sufficiently describe someone who often displayed deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner. Id. at 702. In Edwards v. Barnhart, 383 F.Supp.2d 920 (E.D.Mich. 2005), the ALJ determined that plaintiff had a "moderate limitation in her ability to concentrate, persist, and keep pace," and included in the hypothetical he posed to the ALJ a restriction to "jobs entailing no more than simple, routine, unskilled work." Magistrate Judge Pepe, whose report and recommendation was adopted by Chief Judge Friedman, determined that the restrictions utilized by the ALJ did not adequately convey to the VE plaintiff's deficiencies in the area of concentration, persistence, or pace:

> Again, in the present case, while finding that Plaintiff has a "moderate limitation in her ability to concentrate, persist, and keep pace," the ALJ's limitations were with co-workers, supervisors and the public, and to "jobs entailing no more than simple, routine, unskilled work[.]"... While close, these are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE.... Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence and pace for this Court to have any idea as to the number of assembly, packing, and sorting or security jobs identified by the VE that would be excluded if quotas or other aspects related to a moderate concentration limitations were added to the hypothetical question. Each of these jobs seems to require a degree of sustained concentration, persistence and pace.... Thus, the ALJ's hypothetical question is insufficient.

Id. at 930-31.

As the cases indicate, the ALJ must include in the hypothetical restrictions consistent with the claimant's limitations as established by the record. Again, there is no "one-size fits all" approach to forming a hypothetical. In the present matter, the court finds the ALJ's efforts in this regard to be wanting.

Further, the court finds that the record in this matter does not "adequately establish plaintiff's entitlement to benefits." Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994). There may be jobs that plaintiff can perform notwithstanding his physical and mental limitations, but that can only be determined through the testimony of a VE in response to an accurately formed hypothetical. These are not matters to be decided in the first instance by the court. Thus, an immediate award of benefits is not warranted. Id. Rather, this matter must be remanded for further assessment of plaintiff's mental impairment and for the taking of additional VE testimony based upon an accurately formed hypothetical. The ALJ must clarify his findings regarding the nature and extent of plaintiff's mental impairment and form a hypothetical that encompasses all of plaintiff's limitations related to his deficiency of concentration, persistence, or pace.

### V.  Conclusion

For the reasons stated above, the court recommends that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that the matter be remanded for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

  s/Virginia M. Morgan
VIRGINIA M. MORGAN
Dated:  November 21, 2005    UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP BUCHANAN,

        Plaintiff,                      CIVIL ACTION NO. 05 CV 72374 DT

      v.                               DISTRICT JUDGE BERNARD A. FRIEDMAN

JO ANNE B. BARNHART,            MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.
_____/

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record and the Social Security Administration via the Court's ECF System and/or U. S. Mail on November 21, 2005.

                                      s/Jennifer Hernandez
                                      Case Manager to
                                      Magistrate Judge Virginia M. Morgan